UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JULIO PEREZ,                                    :

                Petitioner,          :          **MEMORANDUM DECISION**

           - v -                           :          22-CV-1464 (DC)

CHRISTOPHER MILLER, Superintendent          :
of Great Meadow Correctional Facility,

                            :

              Respondent.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          JULIO PEREZ
                          Petitioner *Pro Se*
                          #14-A-0961
                          Sing Sing Correctional Facility
                          354 Hunter Street
                          Ossining, NY 10562

                          ERIC GONZALEZ, Esq.
                          District Attorney, Kings County
                          By:    Leonard Joblove, Esq.
                                Jean M. Joyce, Esq.
                                Assistant District Attorneys
                          350 Jay Street
                          Brooklyn, New York 11201
                                Attorney for Respondent

CHIN, Circuit Judge:

        On February 20, 2014, following a jury trial, Petitioner Julio Perez was

convicted in the Supreme Court of New York, Kings County (Sullivan, *J.*) of two counts

of first-degree assault in violation of New York Penal Law § 120.10(1) and three counts

of endangering the welfare of a child in violation of New York Penal Law § 260.10(1). Dkt. 10 at 2-3.  The Appellate Division, Second Department, affirmed his conviction, *People v. Perez*, 92 N.Y.S.3d 106 (2d Dep't 2019) ("*Perez I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Perez*, 124 N.E.3d 729 (N.Y. 2019) (Wilson, *J.*) ("*Perez II*").

On February 20, 2020, proceeding *pro se*, Perez moved pursuant to New York Criminal Procedure Law ("CPL") § 440.10(1)(h) to vacate his judgment of conviction.  *See generally* Dkt. 11-11 at 2-59.  On July 20, 2021, the Kings County Supreme Court (Cyrulnik, *J.*) denied the motion, and on November 3, 2021, the Appellate Division (Mastro, *J.*) denied leave to appeal.  Dkt. 11-14 at 2-10; Dkt. 11-15 at 2.

On March 15, 2022, Perez filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition").  Dkt. 1.  Respondent opposed the Petition on July 12, 2022.  Dkt. 10.  Perez mailed a reply on November 1, 2023, which was docketed on June 21, 2024.  Dkt. 20.

On March 15, 2024, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

## STATEMENT OF THE CASE

### I.    *The Facts*

The evidence at trial established the following:

On July 22, 2012, at about 12:55 a.m., Perez was spending the night with

2

his then-girlfriend Irene Bonilla in the apartment of an individual named Andres

Rivera.  Dkt. 11-2 at 214-15.  Rivera was Bonilla's former romantic partner before she

met Perez, and Rivera and Bonilla shared two children.  *Id.* at 279.  Perez and Bonilla

were watching television in the living room while Rivera and three of Bonilla's children

slept in the bedroom.  *Id.* at 222.  Perez asked Bonilla to have sex, but she declined.  *Id.*

at 235-36.  Approximately twenty minutes later, *id.* at 236, Perez began putting his shoes

on, and Bonilla asked him where he was going.  *Id.* at 222.

      In response, Perez gave Bonilla a "scary" look that she "never saw before

in [her] life," *id.* at 222, 236, and she ran to wake Rivera for help.  *Id.* at 222.  As Bonilla

entered the bedroom, she witnessed Perez coming in behind her.  *Id.* at 223.  Bonilla

moved out of Perez's way and jumped on top of her children, who were asleep in the

same bed as Rivera.  *Id.*  Perez stabbed Rivera in the stomach with a large kitchen knife.

*Id.*  Bonilla stayed on top of her son, who had his eyes shut in fear, *id.* at 223-24, while

Perez pulled the knife out of Rivera's stomach and plunged it into Bonilla's right side.

*Id.* at 224.  Perez then removed the knife from Bonilla's side, threw it on the floor, got on

top of her, and began punching her in the face while repeating "you cheated me, you

cheated me."  *Id.*

      While Perez was attacking her, Bonilla saw Rivera stumble out of the

bedroom.  *Id.* at 225-26.  Rivera made it down three flights of stairs to a restaurant

below, where he asked the staff to call him an ambulance.  *Id.* at 287.  Meanwhile, in the

bedroom, Perez eventually stopped punching Bonilla and slammed the bedroom television to the floor, blocking the doorway. *Id.* at 226. Bonilla sent her children to a neighbor, Sophia Washington, for help. *Id.* When Washington arrived, she called an ambulance while applying pressure to Bonilla's stomach wound, which was so severe that flesh and tissue were protruding from the wound. *Id.* at 227, 308.

Officer Marc Whirl of the New York Police Department (the "NYPD") and his partner, Officer Esposito, responded to the restaurant staff's 911 call. *Id.* at 393-94. Upon arriving at the scene, Whirl observed Rivera sitting in a chair in front of the restaurant, holding his stomach. *Id.* at 395. Rivera was in visible pain, and Whirl noticed a stab wound in Rivera's abdomen. *Id.* Whirl entered the apartment building and went upstairs to Apartment 12, where the door had been left open. *Id.* at 395-96. Once inside, Whirl encountered Bonilla, who had bruises on her face as well as a stomach wound. *Id.* at 396.

In the meantime, Officer Greg Minardi of the 75th Precinct received a radio call at 1:15 a.m. reporting a male (Rivera) stabbed at the corner of Vermont and Jamaica Avenue. *Id.* at 348-49. Minardi, who was on vehicle patrol, apprehended Perez on Miller Avenue, which was approximately three blocks away from Vermont and Jamaica. *Id.* at 349, 353. When Minardi turned Perez over to Whirl, who arrested Perez, *id.* at 397, Minardi observed that Perez had blood on his shorts and hands. *Id.* at 354. Following Perez's arrest, Whirl took and vouchered as evidence Perez's sneakers and

4

shirt, which were also covered in blood.  *Id.* at 397-98.

Bonilla arrived at the emergency room of Brookdale Hospital at 1:56 a.m., where she was examined by senior resident and trauma chief Dr. Samir Ebaid, the surgeon on call.  *Id.* at 378-79.  Dr. Ebaid performed exploratory abdominal surgery to determine the extent of Bonilla's injuries.  *Id.* at 381.  The surgery revealed one liter of blood in her abdomen, *id.*, which constituted a "[m]oderate to large amount" of internal bleeding.  *Id.* at 382.  Upon removing the blood, Dr. Ebaid's team discovered injuries to Bonilla's liver, gallbladder, and small intestine.  *Id.*  The injuries required that Bonilla's gallbladder be completely removed.  *Id.* at 385.  Bonilla also suffered multiple injuries to her face, including lacerations on her right eyebrow and eyelid.  *Id.* at 387.  Bonilla spent six days total in the hospital and was prescribed morphine for her extreme pain.  *Id.* at 238, 388.  Left untreated, Bonilla's injuries would have been life-threatening.  *Id.* at 389.

Rivera arrived at the emergency room of the same hospital at 2:06 a.m., where Dr. Cynthia Bui performed exploratory surgery to determine the extent of Rivera's injuries.  *Id.* at 423-24.  The surgery revealed multiple holes in Rivera's intestine which required the removal of a damaged section of his intestine.  *Id.* at 425-27.  Surgeons stapled shut additional holes in Rivera's bowel.  *Id.* at 427, 432.  Left untreated, Rivera's injuries would have also been life-threatening.  *Id.* at 432.  Rivera remained intubated and on a ventilator for two days following the surgery; he was in extreme pain and was treated with morphine and discharged after nine days.  *Id.* at 430-32.

After she was discharged from the hospital, Bonilla spoke on the phone with Perez.  *Id.* at 251-52.  At trial, Bonilla testified that during their conversation, Perez stated that he "snapped," and that "[e]verything went black" on the night of the incident. *Id.* at 251.

## II.     The State Court Proceedings

### A.     The Indictment

On August 30, 2012, Perez was indicted in Kings County on a total of ten counts: two counts of second-degree attempted murder, two counts of first-degree assault, two counts of second-degree assault, one count of fourth-degree criminal possession of a weapon, and three counts of endangering the welfare of a child.  Dkt. 11-9 at 2-5.

On February 4, 2013, the Supreme Court, Kings County (D'Emic, *J.*) denied Perez's motion to dismiss the indictment.  Dkt. 11-10 at 2.  After reviewing the grand jury minutes *in camera*, the court concluded that "the evidence before the grand jury [was] legally sufficient to establish the findings of the indictment" and there was "nothing in the record to indicate that the integrity of the grand jury proceedings was compromised."  *Id.* (citations omitted).

### B.     The Trial and Sentencing

Trial began on January 15, 2014.  Dkt. 11-2 at 173.  The jury heard testimony from Bonilla, *id.* at 206-56; Rivera, pursuant to a material witness order, *id.* at

6

278-303; EMT Rondell Chester, a first responder on the scene, *id.* at 303-08; EMT

Orlando Pitts, who treated Rivera at the scene, *id.* at 309-13; Sergeant John Capozzi of

the NYPD property clerk division, *id.* at 335-50; Officer Minardi, *id.* at 347-57;

Washington, the neighbor who dialed 911, *id.* at 365-73; Dr. Ebaid, *id.* at 373-92; Officer

Whirl, *id.* at 392-402; and Dr. Bui, *id.* at 413-32.

On the second day of trial, the court held a conference with counsel

outside the jury and Perez's presence.  *Id.* at 259-60.  The court pointed out, *sua sponte*,

that each count in the indictment included language that Perez "act[ed] in concert" with

others.  *Id.* at 268; *see* Dkt. 11-9 at 3-5.  The trial court requested that the prosecution

explain the "acting in concert" language in the indictment, as the prosecution's theory of

the case included "nothing about [Perez] acting in concert [with anyone] at [that] point."

*Id.* at 268.

The prosecution confirmed that "there [were] no allegations that there was

anyone else."  *Id.* at 268.  The prosecution further explained that the charges were

"properly read" to the grand jury -- the grand jury minutes contained "no mention" of

Perez acting in concert with anyone else, despite the language in the indictment.  *Id.* at

269.  Accordingly, the prosecution characterized the "acting in concert" language as a

"clerical error."  *Id.*

Defense counsel argued that the inclusion of the "acting in concert"

language was not simply a clerical error, and that, even if it was, the indictment could

not simply be orally amended.  *Id.* at 270.  Defense counsel argued that, because trial was already underway, the prosecution would have to "ask for a mistrial."  *Id.*  Defense counsel stated that he would "oppose any application . . . to fix or amend" the indictment.  *Id.*  In response to defense counsel's concerns, the prosecution maintained that Perez would suffer no prejudice, because neither the grand jury nor the trial jury knew about the "acting in concert" language.  *Id.* at 271-72.  The next day, after reviewing the grand jury presentation, the grand jury minutes, and the trial testimony, the trial court concluded that "the facts and circumstances of [the case] indicate that the only persons present were [Perez], Ms. Bonilla, [and Mr. Rivera]."  *Id.* at 321-22.  The court ruled, under CPL § 200.70, that the oral amendment was permissible because it did not "tend to prejudice the defendant on the merits."  *Id.* at 322-23.

During the charge conference, the trial court stated that the fourth-degree criminal possession of a weapon and second-degree assault counts would not be submitted to the jury, and, accordingly, those counts were dismissed.  *Id.* at 443-44.

At the close of the prosecution's case, defense counsel moved to dismiss the case because of insufficient evidence.  *Id.* at 434.  Specifically, counsel argued that the knife was never produced, the prosecution failed to preserve certain items of clothing as evidence, and "[t]he only testimony . . . is from two drug addled people whose credibility is substantially in question."  *Id.*  After hearing from the prosecution, the trial court reserved decision on the defendant's motion.  *Id.* at 435.  The defense did

not present a case.  *Id.* at 435-36.  Defense counsel renewed the motion after defense

rested.  *Id.* at 437.  The court reserved decision, *id.* at 437-38.

On January 24, 2014, the jury returned a verdict.  *Id.* at 559.  The jury

found Perez guilty of two counts of first-degree assault and three counts of endangering

the welfare of a child.  *Id.* at 559-61.  The jury acquitted Perez of the two attempted

second-degree murder counts.  *Id.*  The court denied defense counsel's motion after the

jury returned its verdict.  Dkt. 11-2 at 563.

On February 20, 2014, the court sentenced Perez.  *Id.* at 566.  The court

adjudicated Perez a mandatory persistent violent felony offender based on his prior

convictions.  *Id.* at 577.  The court sentenced Perez to twenty years to life in prison for

each of the assault convictions, and one year in prison for each of the endangering

convictions, all to run concurrently.  Dkt. 10 at 3.

## C.    *Direct Appeal*

On April 7, 2017, Perez, represented by counsel, appealed to the Appellate

Division, Second Department, arguing that the evidence was legally insufficient to

establish beyond a reasonable doubt that he intended to cause serious physical injury to

Bonilla and Rivera when he stabbed them, and that the verdict was against the weight

of the evidence.  *See generally* Dkt. 11-3 at 2-21.  Then, on September 20, 2017, proceeding

*pro se*, Perez filed a supplemental brief in which he argued that (1) the trial court

erroneously permitted an amendment of the indictment; (2) the court should have held

9

a pretrial hearing on whether police had probable cause to arrest him; (3) the

prosecution's witnesses were not credible; (4) the trial court erred when it questioned

Rivera prior to trial on whether he would testify voluntarily because Rivera appeared in

court pursuant to a material witness order; (5) trial counsel was ineffective at

sentencing; and (6) and his sentence was excessive.  Dkt. 11-4 at 2-38.

On January 23, 2019, the Appellate Division affirmed Perez's convictions,

holding that the evidence at trial "was legally sufficient to establish the defendant's guilt

of two counts of assault in the first degree beyond a reasonable doubt."  *Perez I*, 92

N.Y.S.3d at 107 (citation omitted).  It also held Perez's "contentions in his *pro se*

supplemental brief regarding pretrial hearings and his arrest are unpreserved for

appellate review and, in any event, without merit."  *Id.*  Finally, the court dismissed

Perez's remaining contentions raised in his *pro se* supplemental brief as without merit.

*Id.*  at 107-08.  On April 30, 2019, the New York Court of Appeals (Wilson, *J.*) denied

Perez's application for leave to appeal.  *Perez II*, 124 N.E.3d at 729.

### D.    State Collateral Review

On February 20, 2020, proceeding *pro se*, Perez moved pursuant to

CPL § 440.10(1)(h) to vacate the judgment of conviction (the "440 Motion"), arguing that

(1) he received ineffective assistance of trial counsel; (2) various aspects of the

prosecution -- an allegedly defective indictment, prosecutorial misconduct, and a *Brady*

violation -- violated his due process rights; and (3) he was actually innocent.  *See*

*generally* Dkt. 11-11 at 2-59.  On July 20, 2021, the Kings County Supreme Court

(Cyrulnik, *J.*) denied the motion, finding that Perez's ineffective assistance and due

process claims were procedurally barred and, in any event, without merit; it also found

that his actual innocence claim was meritless.  Dkt. 11-14 at 2-10.  On November 3, 2021,

the Appellate Division (Mastro, *J.*) denied leave to appeal.  Dkt. 11-15 at 2.

## III.    The Petition

On March 15, 2022, proceeding *pro se*, Perez filed the Petition asserting

that: (1) trial counsel was ineffective in several respects; (2) he was denied due process

during trial in several respects; and (3) he is actually innocent.  *See generally* Dkt. 1.

On July 12, 2022, the King's County District Attorney's Office filed its

opposition to the Petition.  Dkt. 10.  Perez filed a reply which was postmarked

November 1, 2023, and which was docketed on June 21, 2024.  Dkt. 20 at 58.

On March 15, 2024, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

## DISCUSSION

## I.    Federal Review of State Convictions

A federal court may not grant a habeas petition on a claim that was

adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015).  "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment."  *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  A state law error is therefore insufficient for habeas corpus relief unless it rises to a level that implicates a federal constitutional right.  *Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).  Such error does not rise to the level of a constitutional violation unless the petitioner can demonstrate that the error had a "substantial and injurious effect or influence" on the jury's verdict.  *Headley v. Tilghman*, 53 F.3d 472, 474 (2d Cir. 1995) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Finally, a federal court may not grant the habeas petition of a state prisoner "unless it appears that the applicant has exhausted the remedies available in the courts of the State; or that there is either an absence of available State corrective process; or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b)(1). To satisfy section 2254's exhaustion requirement, a petitioner must present the substance of "the same federal constitutional claim[s] that he now urges upon the federal courts to the highest court in the pertinent state." *Aparicio v. Artuz*, 269 F.3d 78, 89–90 (2d Cir. 2001) (citations and internal quotation marks omitted).

If a state court's decision regarding a claim "rests on a state law ground that is independent of the federal question and adequate to support the judgment," the claim is procedurally barred, whether the state-law ground is substantive or procedural. *Coleman*, 501 U.S. at 729; *accord Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010). "When the petitioner fail[s] to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, federal habeas courts also must deem the claims procedurally defaulted." *Aparicio*, 269 F.3d at 90. If a claim is procedurally barred pursuant to an independent and adequate state rule, a federal habeas court may not review it on the merits, unless the petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the alleged violation of federal

13

law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

## II.    Analysis

In his Petition, Perez contends that (1) he was denied due process during trial on several grounds; (2) trial counsel was ineffective in several respects; and (3) he is actually innocent. *See generally* Dkt. 1. Because Perez's ineffective assistance of counsel claims stem from counsel's failure to object to what Perez alleges are due process violations, I address the alleged due process violations and the corresponding ineffective assistance of counsel claims together.

### A.    The Alleged Pre-trial Amendment of the Indictment

Perez's first claim involves the grand jury's return of the operative indictment, dated August 30, 2012. *See* Dkt. 11-12 at 16. Perez apparently argues that the prosecution engaged in misconduct and violated his due process rights when it illegally amended the indictment to add charges before trial. *See* Dkt. 1 at 6. The state court record indicates, however, that there was no illegal amendment of the indictment. On July 27, 2012, the grand jury heard evidence concerning the two second-degree attempted murder charges and voted to indict Perez. Dkt. 11-12 at 17; Dkt. 11-13 at 2. The grand jury presentation continued on August 3, 2012, when the same grand jury reviewed more evidence and voted a true bill on additional charges: two counts of first-degree assault, two counts of second-degree assault, one count of fourth-degree

14

criminal possession of a weapon, and three counts of endangering the welfare of a child.  Dkt. 11-12 at 17; Dkt. 11-13 at 2.  The grand jury returned the operative ten-count indictment on August 30, 2012.  Dkt. 11-12 at 17.  By decision and order dated February 4, 2013, the Supreme Court, Kings County (D'Emic, *J.*) denied Perez's motion to dismiss the indictment, concluding that "nothing in the record . . . indicate[d] that the integrity of the grand jury proceedings was compromised."  Dkt. 11-10 at 2.[1]

Perez raised this claim for the first time in his 440 Motion.  *See* Dkt. 11-11 at 7.  It is not apparent that the state court addressed this claim in its decision denying the 440 Motion.  *See* Dkt. 11-14 at 3-9.  In any event, the Second Circuit has made clear that "claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding."  *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989).  Hence, the claim also fails on the merits.  The state court record indicates that the grand jury presentation had not finished by the time the additional charges were added to the indictment.  Moreover, after reviewing the grand jury minutes *in camera*, the state court concluded that "the evidence before the grand jury [was] legally sufficient to establish the findings of the indictment," and there was no defect in the grand jury presentation. Dkt. 11-10 at 2.  Perez is therefore not entitled to habeas relief on this ground.

---

[1]      The motion to dismiss the indictment is not included in the state court record before this Court.

Accordingly, Perez's ineffective assistance of counsel claim related to the allegedly illegal pre-trial amendment of the indictment must also be dismissed.  In general, to prevail on a claim of ineffective assistance under federal law, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness" and (2) establish prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  In the context of a habeas petition under 28 U.S.C. § 2254, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so."  *Harrington*, 562 U.S. at 105 (citations omitted). Therefore, "[t]he operative question" when a federal court reviews a state court's ineffective-assistance-of-counsel ruling is "not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable."  *Waiters*, 857 F.3d at 478 (alterations adopted) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

The standard to establish an ineffective-assistance-of-counsel claim under New York law is lower than under federal law.  *See People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y. 2017).  In New York, a defendant must show only "that counsel failed to provide meaningful representation."  *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019)

16

(citing *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400 (N.Y. 1981)).  Unlike the federal standard, *see Strickland*, 466 U.S. at 694, under the state standard, the defendant is not required to demonstrate that he was prejudiced by the ineffective assistance.  *See Alvarez*, 125 N.E.3d at 120.

   In his 440 Motion, Perez argued that counsel was ineffective for failing to object to the allegedly illegal pre-trial amendment of the indictment.  Dkt. 11-11 at 14. The court concluded that the claim was procedurally barred because, as a record-based claim, the issue should have been raised on direct appeal.  Dkt. 11-14 at 6 (citing CPL § 440.10(2)(c)).  Habeas relief is thus unavailable to Perez for these claims.  For an independent and adequate state ground to bar habeas relief, the state court rendering the judgment must "clearly and expressly state that its judgment rests upon a state procedural bar."  *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)).  Here, the state court clearly and expressly stated that this claim of ineffective assistance was procedurally barred.

   Moreover, Perez has failed to demonstrate that he is entitled to an exception to the procedural default rule because he has not shown either (1) cause and actual prejudice or (2) that a fundamental miscarriage of justice would occur if the merits of the federal claims were not considered.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citations omitted); *Coleman*, 501 U.S. at 748; *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

Even if it were not procedurally barred, the claim still fails on the merits. As explained above, there was no constitutional defect in the grand jury proceedings. Counsel would have had no basis upon which to oppose the indictment.  Accordingly, Perez cannot show that counsel's performance was unreasonable or prejudicial.  Thus, this portion of Perez's ineffective-assistance-of-counsel claim must be rejected.

### B.        The Oral Amendment of the Indictment

In his next set of claims for habeas relief, Perez contends that he was denied due process of law and was subjected to prosecutorial misconduct based on the oral amendment of the indictment while trial was underway.  Dkt. 1 at 6.  Perez also contends that counsel was ineffective because (1) counsel became an "advocate" for the prosecution in arguing that the prosecution could not orally amend the indictment but would have to instead request a mistrial, and (2) he did not move for a mistrial himself. *See* Dkt. 1 at 5.  Neither the underlying due process claim nor the ineffective assistance claim provides any basis for habeas relief.

As explained in Section II.B above, on the second day of trial, the trial court permitted the prosecution to orally amend the indictment to remove the "acting in concert" language that appeared in each count of the indictment, which was apparently a clerical error.  *See generally* Dkt. 11-2 at 259-69.  The court permitted the indictment because nothing indicated that the prosecution's theory of the case would include the contention that Perez acted with anyone else.  *Id.* at 268.

18

Perez raised a due process and prosecutorial misconduct claim based on the oral amendment in his 440 Motion. Dkt. 11-11 at 18. The state court dismissed the claim as record-based and procedurally barred. Dkt. 11-14 at 6.[2]

The claim lacks merit in any event. The assertion that the prosecution illegally amended the indictment and changed its theory of the case does not present a basis for habeas relief under the Due Process Clause of the Fourteenth Amendment. *See Parker v. Wenderlich*, No. 14-CV-5896 (JG), 2015 WL 5158476, at *17 (E.D.N.Y. Sept. 2, 2015) (concluding that a claim "that the prosecutor or the court illegally amended the indictment and changed the theory of prosecution fails to set forth a cognizable basis for federal habeas relief" because "[t]he Fifth Amendment's right to a grand jury indictment has not been incorporated against the states through the Fourteenth Amendment, and thus does not work to limit state prosecutions" (citing *LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002))).

Furthermore, under CPL § 200.70, the prosecution is permitted to amend an indictment at any time before or during trial "to correct errors, so long as it does not prejudice the defendant." *LanFranco*, 313 F.3d at 119; *see* CPL § 200.70(1). As the section 440 court noted, "[t]he evidence before the Grand Jury and at trial was that defendant

---

[2] For the reasons set forth in more detail above, habeas relief is unavailable to Perez on this claim, which was dismissed as procedurally barred in state court and for which he does not make a showing of prejudice warranting an exception to the procedural default rule. *See Whitley*, 642 F.3d at 286; *Carvajal*, 633 F.3d at 104. The procedural bar is an independent basis for denying relief.

acted alone.  The amendment was therefore proper."  Dkt. 11-14 at 7 (citation omitted).

Perez has not shown that removing the "acting in concert" language prejudiced him in

any way.  Accordingly, Perez's claim also fails on the merits.

        As for the ineffective-assistance-of-counsel claims stemming from the

oral amendment of the indictment, Perez argued in his 440 Motion that defense counsel

was ineffective for failing to request a mistrial.  Dkt 11-11 at 12.  The state court

dismissed this claim as procedurally barred because Perez should have raised it on

direct appeal.  Dkt. 11-14 at 6.[3]  For the first time in his Petition, Perez argues that

counsel was also ineffective for becoming an "advocate" for the prosecution.  Dkt. 1 at 5.

This aspect of Perez's ineffective assistance claim is unexhausted for purposes of habeas

review because Perez has not "fairly presented" it to the state courts, *Bierenbaum*, 607

F.3d at 47.  Generally, when faced with a "mixed petition" containing exhausted and

unexhausted claims, a habeas court should consider staying the petition so that the

petitioner can exhaust the claims in state court.  *Zarvela v. Artuz*, 254 F.3d 374, 380 (2d

Cir. 2001).  But a habeas court may dismiss any claims if they are plainly meritless, even

if they are unexhausted.  *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).

        Both ineffective-assistance-of-counsel claims based on the oral

amendment of the indictment during trial are plainly meritless.  First, the trial record

---

[3]     Accordingly, the procedural default rule applies to the claim that counsel was ineffective for failing to request a mistrial.  *See Whitley*, 642 F.3d at 286; *Carvajal*, 633 F.3d at 104.

clearly belies the contention that defense counsel became an "advocate" for the prosecution. In opposing the prosecution's application to amend the indictment, defense counsel contended that, because trial was already underway, the prosecution had to instead seek a mistrial. Dkt. 11-2 at 270. Far from advocating for the prosecution, by arguing that the prosecution would have to move for a mistrial, defense counsel was advocating for Perez. Under these circumstances, Perez cannot show that counsel's performance was unreasonable or prejudicial.

The same goes for Perez's claim that counsel was ineffective for failing to seek a mistrial based on the oral amendment. Counsel twice objected to the prosecution's application to orally amend the indictment, and it was not prejudicially unreasonable for counsel to forgo moving for a mistrial after the court overruled his objections to the amendment. *Id.* at 270-71, 324. Moreover, the oral amendment was proper and did not deprive Perez of a fair trial -- any defense motion for a mistrial would have been frivolous. Accordingly, Perez does not meet his burden of showing that defense counsel was ineffective for failing to move for a mistrial.

### C.    *Rivera's Testimony*

Perez next argues that Rivera's testimony, pursuant to a material witness order, violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and that counsel was ineffective for failing to raise the *Brady* issue. Perez raised the *Brady* issue both on appeal and in his 440 Motion. Dkt. 11-14 at 17-18; Dkt. 11-11 at 26. The Appellate

Division and the section 440 court each considered and rejected the claim on the merits. *Perez I*, 92 N.Y.S.3d at 107-08; Dkt. 11-14 at 7 (concluding that Rivera's testimony was not *Brady* material).  We accord "substantial deference" to both decisions.  *Fischer*, 780 F.3d at 560.  The conclusion that Rivera's testimony did not present a *Brady* violation is certainly reasonable.  *Brady* requires the prosecution to produce "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment."  373 U.S. 83, 87 (1963).  Under New York law, testimony of a witness procured by a material witness order does not present a *Brady* problem where the testimony is not exculpatory.  *See, e.g.*, *People v. Spruill*, 82 N.Y.S.3d 520, 525 (2d Dep't 2018) ("Furthermore, that the prosecutor had obtained a material witness order to secure [a witness's] testimony d[oes] not constitute *Brady* material because that information was not exculpatory." (citation omitted)).

Here, Rivera's testimony was not exculpatory -- indeed, his testimony identified Perez as the assailant and described how Perez attacked Rivera and Bonilla in great detail.  *See generally* Dkt. 11 at 278-303.  Accordingly, the state courts' conclusion that Rivera's testimony was outside the scope of *Brady* was a reasonable application of federal law and is entitled to substantial deference.  Habeas relief is unavailable to Perez on this ground.

Perez's claim that counsel was ineffective for "fail[ing] to expose a [*Brady*] violation" is unexhausted because he raises it for the first time in the Petition.  Dkt. 1 at

5.  In any event, the claim is dismissed as plainly meritless in light of the foregoing

analysis.  As discussed above, Rivera's testimony does not present a *Brady* violation,

principally because it was not exculpatory.  Any objection defense counsel could have

lodged based on *Brady* would have been frivolous.  Because Perez cannot show that

defense counsel's performance was unreasonable or prejudicial in this regard, his

ineffective assistance claim based on Rivera's testimony must be dismissed.

###### D.     Counts 5, 6, and 7

Perez claims that Counts 5, 6, and 7 of the indictment, which were

dismissed during trial, were wrongly submitted to the jury on the verdict sheet.  Dkt. 1

at 6.  Perez raised this claim in his 440 Motion and the court dismissed the claim on the

merits.  Dkt. 11-14 at 7.  The state court's decision is entitled to "substantial deference,"

*Fischer*, 780 F.3d at 560, and in any event, the claim is based on a misunderstanding of

the record.

Perez is correct that the court dismissed Counts 5, 6, and 7 of the

indictment during trial.  Dkt. 11-2 at 443-44 (dismissing the two counts of second-degree

assault (Counts 5 and 6) and one count of fourth-degree criminal possession of a

weapon (Count 7)); *see* Dkt. 11-9 at 4.  But he misconstrues the record when he contends

that the dismissed counts were nevertheless submitted to the jury.  The verdict sheet

distributed to the jury re-numbered the remaining counts such that Counts 5, 6, and 7

on the verdict sheet corresponded to the three counts of endangering the welfare of a

23

child -- Counts 8, 9, and 10 of the indictment.  Dkt. 11-9 at 4-5; Dkt. 11-11 at 48-49.

Those counts were never dismissed.  Thus, there is no basis for habeas relief with

respect to the submission of Counts 5, 6, and 7 on the verdict sheet to the jury.  In

arguing otherwise, Perez plainly misunderstands the record.  For this reason, Perez's

related ineffective-assistance-of-counsel claim -- in which he argues that counsel should

have objected to the verdict sheet -- also fails.[4]

### E.   Perez's Other Claims

Perez raises two additional grounds for relief in his Petition: (1) the

prosecution forged the February 4, 2013 order of the Kings County Supreme Court

denying his motion to dismiss the indictment, and (2) he is actually innocent.  Dkt. 1 at

8, 10.  I address each claim in turn.

### 1.   The Allegedly Forged Court Order

In his 440 Motion, Perez alleged as part of a now-abandoned ineffective-

assistance-of-counsel claim that he was "given a Memorandum indicating that his

Pretrial Motions were denied . . . which the District Attorney and the Trial Court passed

off as being an Order Decision Judgment."  Dkt. 11-11 at 13.  Perez apparently refers to

the February 4, 2013 order of the Kings County Supreme Court concluding that there

---

[4]      This aspect of his ineffective-assistance-of-counsel claim is procedurally barred based on
the section 440 court's decision, *see* Dkt. 11-14 at 6, and Perez does not make a showing of
prejudice to overcome the procedural default rule.  *Whitley*, 642 F.3d at 286; *Carvajal*, 633 F.3d at
104.  Nevertheless, because the record clearly refutes any claim of ineffective assistance, the
Court disposes of the claim on the merits.

were no issues with the grand jury proceedings.  Dkt. 11-10 at 2.  He attached a partial

photocopy of the allegedly forged order to his 440 Motion.  *See* Dkt. 11-11 at 35.

Respondent has produced a complete copy of the same order as part of the record

before this Court.  *See* Dkt. 11-10 at 2.  Though there is no handwritten signature on the

page, the order is stamped with Judge D'Emic's name, and nothing indicates that the

order was forged or doctored.  Dkt. 11-10 at 2.  Accordingly, habeas relief is not

available on this ground.

### 2.      *The Actual Innocence Claim*

Finally, Perez requests habeas relief on the basis of actual innocence,

which he raised in his 440 Motion.  Dkt. 1 at 10; Dkt. 11-11 at 28.  The state court denied

the claim on merits, Dkt. 11-14 at 8, and its decision is entitled to substantial deference,

*Fischer*, 780 F.3d at 560.  It was reasonable for the state court to conclude that Perez's

actual innocence claim lacks merit.  A habeas petitioner faces a "deliberately

demanding" burden to prove actual innocence; therefore, to prevail, he must "adduce

new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence -- that was not presented at trial."

*Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019) (citations and internal quotation marks

omitted).  Here, Perez's claim of actual innocence is wholly conclusory and

unsubstantiated -- indeed, he only writes that he has a "claim of actual innocence"

without providing any supporting details, facts, or argument.  Dkt. 1 at 10.  Moreover,

there was ample evidence of Perez's guilt at trial; both victims testified, and their accounts were consistent with one another. *See* Dkt. 11-2 at 206-56, 278-303. There were several other eyewitnesses to the immediate aftermath of the incident, and when Perez was arrested, he was covered in blood. In light of this overwhelming evidence, which the jury was free to credit in reaching its verdict, Perez does not come close to satisfying his burden of adducing new evidence of his innocence. Accordingly, his actual innocence claim is denied.

## CONCLUSION

Perez has failed to show a basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition is denied in its entirety. Additionally, I decline to issue a certificate of appealability because Perez has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253.

The Clerk of the Court shall enter judgment accordingly and close this case. The Clerk of Court shall also mail copies of this memorandum decision and the judgment to Perez at the address set forth above.

SO ORDERED.

Dated:     New York, New York
           July 8, 2024

_____
DENNY CHIN
United States Circuit Judge
Sitting By Designation

26